UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHANNES DEUSS,<br><br>         Plaintiff,<br>   v.<br><br>NICOLA ANGIE SISO,<br><br>         Defendant. | Case No. 14-cv-00710-YGR   (JSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO QUASH SUBPOENAS AND FOR SANCTIONS**<br><br>Re: Dkt. No. 20 |

When attorneys are admitted to practice in the Northern District of California they must certify that they have knowledge of the Federal Rules of Civil Procedure as well as the Local Rules of this Court. This requirement is not a mere technicality; much of federal litigation occurs outside the supervision of a judge and therefore the court relies on attorneys to follow the rules. For example, attorneys can use the federal court's authority to subpoena third party records without express court authorization. *See* Fed. R. Civ. P. 45. To ensure that the ability to obtain such records is not misused, and that interested parties have an opportunity to challenge such discovery, certain rules apply. *See* Fed. R. Civ. P. 26(d)(1); 45.

Plaintiff Johannes Deuss filed this civil action against Defendant Nicola Siso to recover money and other property he gave Siso during their since-terminated marriage engagement. The pending motion to quash and for sanctions arises because Plaintiff's counsel violated the Federal Rules by issuing Rule 45 subpoenas for Siso's records—including highly confidential and personal information—on the same date he filed the complaint. Because the subpoenas were served in gross violation of the Federal Rules of Civil Procedure as well as common sense, and because Plaintiff never withdrew the subpoenas even after the violation was drawn to Plaintiff's counsel's attention, the motion to quash and for monetary sanctions is GRANTED.

**BACKGROUND**

Plaintiff Johannes Deuss is a Dutch citizen and resident of Bermuda. According to the Complaint, Mr. Deuss and Ms. Siso became engaged in July 2010 at which time Mr. Deuss gave Ms. Siso an engagement ring worth $29,000. (Dkt No. 1 ¶ 8.) Mr. Deuss subsequently gave Ms. Siso $925,000 to purchase a house in St. Helena, California. (*Id*. at ¶¶ 10-11.) Mr. Deuss alleges that approximately three months after Ms. Siso used the funds to purchase the house she ended the engagement. (*Id*. at ¶¶ 12-13.) In November and December 2013, Mr. Deuss asked Ms. Siso to transfer title of the house to him or return its value, and return the engagement ring, as well as to reimburse him for medical insurance premiums and cellular telephone charges. (*Id*. at ¶¶ 15-17.) In December 2013, Mr. Deuss learned that Ms. Siso had apparently sold the St. Helena home earlier in the month. (Dkt. No. 24-1 ¶ 4.) Two months later, on Valentine's Day, Mr. Deuss filed this action seeking return of the money used to purchase the house, the engagement ring, and $22,621.10 for other payments Mr. Deuss allegedly made on behalf of Ms. Siso. (Dkt. No. 1.) At the time the Complaint was filed Mr. Deuss did not know where Plaintiff was residing. (Dkt. 24-1 at ¶ 4-9.)

On the same day Mr. Deuss filed the Complaint, his Counsel[1] issued subpoenas to Amazon.com, Inc., JP Morgan Chase, Bank of America, N.A., the California Department of Motor Vehicles ("DMV"), First American Title Company, and ten days later, to Defendant's mother, Sara Siso.[2] The subpoenas sought the following:

**Amazon**:

1. All documents that relate to the book entitled 50 Premiere Winemakers of Napa Valley: Their Insights and Inspirations, as listed on your website at http:/ /www.amazon.com/Premiere-Winemakers-Napa-ValleyInspirations/dp/0986051500/ref=aag m pw dp?ie=UTF8&m=A2MVWSMOF A4C P2 (as of February

---

[1] Mr. Deuss is represented by Jones Day LLP and partner Philip Cook. Mr. Cook signed the subpoenas at issue and has accepted responsibility as lead counsel on the case. For purposes of this Order, the Court refers to Mr. Deuss's counsel as "Counsel."

[2] Counsel attests that the subpoenas (other than the deposition subpoena to Sara Siso) were issued on February 14, 2014, and that the subpoenas to the DMV, Amazon.com, and JP Morgan were served five days later, and the subpoenas to Bank of America and First American Title were served March 10, 2014 and March 20, 2014, respectively. (Dkt. No. 24-1 ¶ ¶ 9 & 11.)

> 8, 2014), including, but not limited to, documents reflecting financial information about number of units sold and revenue for such sales, communications to or from Nicola Angie Siso or Nicola Siso Photography LLC regarding the book, documents evidencing payments to Nicola Angie Siso or Nicola Siso Photography, LLC for the book, and any bank account information reflecting the destination for payments you have made, or have been instructed to make, for sales of the book.

(Dkt. No. 20-2 at 15.)

**JP Morgan Chase:**

> 1. All documents that relate to Nicola Angie Siso from October 1, 2013 to present, including, but not limited to, any address information you have for her.
> 2. All documents that relate to what was Washington Mutual account number 0954819630 associated with Nicola Angie Siso, with the Clearing Code I Party Identifier 267084131 (the "Account"), including any open account at JP Morgan Chase that was, or into which funds were transferred from, the Account from October 1, 2013 to present, including, but not limited to, account statements, wire transfer information and current mailing address on file for the account holder.

(Dkt. No. 20-2 at 19.)

**Bank of America, N.A.**:

> 1. All documents that relate to Nicola Angie Siso from October 1, 2013 to present, including, but not limited to, any address information you have for her.
> 2. All documents that relate to Bank of America, N.A. account number 483010711362 associated with Nicola A. Siso, with the Bank Identifier Code BOFAUS3NXXX, from October 1, 2013 to present, including, but not limited to, account statements, wire transfer information and current mailing address on file for the account holder.

(Dkt. No. 20-2 at 23.)

**DMV**:

> 1. All documents that relate to Nicola Angie Siso, including, but not limited to, any address information you have for her after September 2013.
> 2. All documents that relate to the 2013 Lexus vehicle registered with California license plate 6YEE193, including, but not limited to, the January 2014 declaration of non-use.

(Dkt. No. 20-2 at 7.)

**First American Title Company:**

> 1. All documents that relate to the December 2013 sale of the residential property located at 1190 Meadowcreek Circle, St.

> Helena, CA 94574 from Nicola Angie Siso to James Nolan, including, but not limited to, the complete escrow file associated with this sale.

(Dkt. No. 20-2 at 11.)

The subpoena to Ms. Siso's mother directed her to appear for a deposition on March 18, 2014. (Dkt. No. 20-3 at 3.) She did in fact appear for her deposition on this date without counsel and was deposed for less than one hour.

Amazon.com objected to the subpoena. In response, Counsel sent a letter to Amazon.com stating that "any financial information sought by and within the scope of the subpoena, will be used by us solely for the purposes of *prosecuting the above-entitled action*." (Dkt. No. 24-4 (emphasis added).) Amazon.com subsequently produced 6 pages of information. The DMV produced 5 pages of documents, Bank of America produced 35 pages of documents, and First American Title produced the entire 68-page escrow file. At some point Ms. Siso became aware of the lawsuit and retained counsel. JP Morgan Chase refused to produce any documents citing objections it had received from Ms. Siso's counsel.

Counsel learned on April 9, 2014, as a result JP Morgan forwarding Ms. Siso's subpoena objections, that Ms. Siso had retained counsel. That same day, Counsel mailed a request to waive service of the summons and complaint to Ms. Siso's counsel. (Dkt. No. 7 ¶ 8.) The waiver of service provided that Ms. Siso had 60 days—that is, until June 9, 2014—to respond to the summons and complaint. (Dkt. No. 26-7.) Nevertheless, on May 6, 2014, Counsel filed with the Court a "Status Report Regarding Service of Process" in which Counsel misrepresented that Ms. Siso only had until May 9, 2014 to respond and stated that it appeared that Ms. Siso was evading service of process. (Dkt. No. 7.) On May 23, 2014, in connection with an Ex Parte Application for Order Directing Publication of the Summons, Counsel again misrepresented that the last day for Ms. Siso to request a waiver of service was May 9, 2014. (Dkt. No. 10 at 5.) The district court granted the request for service by publication on May 29, 2014. (Dkt. No. 13.)

On June 9, 2014, Ms. Siso filed a Motion to Dismiss within the time allotted under the waiver of service. (Dkt. No. 16.) Three days later, Ms. Siso filed the underlying Motion to Quash and for Sanctions which Mr. Deuss opposed. (Dkt. No. 24.) The motion was referred to the

4

1 undersigned magistrate judge for disposition. The Court ordered Philip Cook, counsel for Mr.
2 Deuss, to appear personally at the July 31, 2014 hearing on the motion. (Dkt. No. 31.) Mr. Cook
3 did not appear at 9:00 a.m. when the motion was calendared. After contacting his office, he
4 appeared at 9:29 a.m. stating that he had miscalendared the time of the hearing. The Court heard
5 oral argument, referred the parties to the Court's ADR unit, and took the motion under
6 submission. The Court also ordered Counsel to provide Ms. Siso's counsel with copies of all
7 documents obtained in response to the subpoenas and to certify in writing that the original of said
8 documents and all copies had been destroyed. Counsel was also ordered to provide a copy of Ms.
9 Siso's mother's deposition transcript to the Court and destroy the original and copies of the
10 transcript.

11 Mr. Deuss subsequently filed a Notice of Voluntary Dismissal Without Prejudice which
12 was granted on August 13, 2014. (Dkt. Nos. 37 & 38.) That same day, Counsel filed a
13 supplemental status report indicating that Ms. Siso's counsel had been provided copies of all the
14 required documents and that he was "in the process of ensuring that all physical and electronic
15 copies of all documents received pursuant to Plaintiff's subpoenas, as well as the deposition
16 transcript of Sara Siso, are deleted or destroyed." (Dkt. No. 39 ¶¶ 3-4.) To date, Counsel has not
17 filed a certification that the documents have in fact been deleted or destroyed.

18 **DISCUSSION**

19     **A.**    **The Subpoenas Violated Rules 26(d)(1) and 45(a)(4)**

20 Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The
21 scope of the discovery that can be requested through a Rule 45 subpoena is the same as the scope
22 under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery
23 through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R.
24 Civ. P. 34(a) ("A party may serve on any other party a request within the scope of
25 Rule 26(b)."). Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter
26 that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

27 There are additional restrictions, however, on *when* a party may seek discovery. Federal
28 Rule of Civil Procedure 26(d)(1) dictates that "a party may not seek discovery from any source

before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Likewise, "before [a subpoena] is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4); *see also* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment ("The purpose of such [prior] notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."). "While Federal Rule of Civil Procedure 45 does not specify when a subpoena may be issued, because a subpoena is considered a discovery device, it is subject to the provisions of Rule 26(d)." *Michelle v. Arctic Zero, Inc.*, No. 12-2063, 2013 WL 3807888, at *3 (S.D. Cal. July 18, 2013); *see also Villegas v. United States*, No. 12-0001, 2012 WL 1801735, at *8 (E.D. Wash. May 16, 2012) ("Rule 26(d) clearly prohibits 'discovery from any source' before the parties have conferred, which by its plain language includes subpoenas duces tecum served on non-parties.").

As the subpoenas were issued on the same day the Complaint was filed and served shortly thereafter they violated Rule 26(d)(1) which prohibits *any* discovery from *any* source before first conferring with the opposing party pursuant to Rule 26(f). Such a conference cannot occur before a party has been served with the complaint and had the opportunity to retain counsel. Counsel does not dispute the Rule 26(d)(1) violation.

The subpoenas also violated Rule 45(a)(4). Counsel's assertion that they complied with the notice requirement because copies of each subpoena were mailed to Ms. Siso's last known address (Dkt. No. 24-1 at ¶ 13) ignores the Rule's language. It requires service of the subpoena on each party to the case *before* service of the subpoena; indeed, the title of the provision is "***Notice to Other Parties Before Service***." Fed. R. Civ. P. 45(a)(4). Mailing a copy of the subpoena after service on the third party, or even at the same time as such service, is not "service" "before" on each party, especially when one knows that the party does not reside at the mailing address. And such a mailing does not meet the Rule's goal of affording "other parties an opportunity to object to the production or inspection." Fed. R. Civ. P. 45, Advisory Committee Note, 1991 amendment.

1     As the subpoenas were served in violation of the Federal Rules they must be quashed. *See*
2  *Desilva v. North Shore-Long Island Jewish Health System Inc.*, No. 10–1341, 2010 WL 3119629,
3  at *1 (E.D.N.Y. Aug. 9, 2010) (quashing third party subpoenas served in violation of Rule
4  26(d)(1)). Ms. Siso was prejudiced by this violation. She was unable to object to most of the
5  subpoenas and as a result many of them were complied with, including her mother's deposition.
6  As Plaintiff has no right to any of the subpoenaed information, and as stated at oral argument, the
7  original and all copies, electronic or otherwise, of any documents produced pursuant to the
8  subpoenas, as well as the deposition transcript must be provided to Defendant or destroyed.
9  Counsel has submitted a declaration attesting that he provided copies of all subpoenaed records to
10 Defendant, but he has not yet submitted a declaration that all copies in Counsel's or the client's
11 possession have been destroyed. He must do so within three business days of the filing of this
12 Order.

### B. Defendant is Entitled to Sanctions

The next question before the Court is what flows from Counsel's conduct. Ms. Siso seeks sanctions in the amount of $13,375.00 for the fees and costs she incurred in bringing the motion to quash.

#### 1. The Court has the authority to sanction Counsel's conduct

Rule 26(g), entitled "Signing Disclosures and Discovery Requests, Responses, and Objections," requires every discovery request to be signed by at least one attorney of record (if made on behalf of a represented party). Fed. R. Civ. P. 26(g)(1).

> By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> (B) with respect to a discovery request, . . . it is;
>
>   (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
>   (ii) not interposed for an improper purpose, such as to harass cause unnecessary delay, or    needlessly increase the cost of litigation; and

7

> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B)(i)-(ii). The Rule provides further that when an attorney makes a certification that violates the Rule "without substantial justification" the court, on its own or on motion, *"must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3)(emphasis added); *see also R&R Sails Inc. v. Insurance Co. of State of PA*, 251 F.R.D. 520 (S.D. Cal. 2008) ("Sanctions under Rule 26(g) must be issued unless violation of the rule was 'substantially justified.'"). The same standard applies to Rule 26(g) as Rule 11; that is, the reasonableness of the signer's conduct "is measured by an objective standard; there is no required showing of bad faith." *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987).

The Advisory Committee Notes to the 1983 amendments to Rule 26(g) explain that the Rule "imposes an affirmative duty to engage in pretrial discovery in a responsible manner." The Rule "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. [It] provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request." Fed. R. Civ. P. 26(g), Advisory Committee Notes, 1983 Amendment.

**2.    Counsel Made an Improper Certification**

By signing the subpoenas, Counsel "certified" that each discovery request, was, among other things, "consistent with these rules." Fed. R. Civ. P. 26(g)(1). As Counsel concedes, the subpoenas were not: they unambiguously violated Rule 26(d) which forbids the seeking of discovery from "any source" before the Rule 26(f) conference. And, as explained above, the subpoenas also violated Rule 45(a)(4).

**3.    Counsel's Conduct was not Substantially Justified**

Sanctions for an improper certification are mandatory unless Counsel's conduct was "substantially justified." Counsel's conduct manifestly was not.

First, Counsel claims that he was not aware of the automatic discovery hold of Rule 26(d). His ignorance, however (assuming it is true), is inexcusable. Counsel is admitted to practice in the Northern District of California and litigated a case in the Northern District as recently as 2010. *See Openwave Systems, Inc. v. Fuld et al.*, No. 08-cv-5683-SI (N.D. Cal.). To be admitted to the Northern District an attorney must certify:

> (1) Knowledge of the contents of the Federal Rules of Civil and Criminal Procedure and Evidence, the Rules of the United States Court of Appeals for the Ninth Circuit and the Local Rules of this Court;
>
> (2) Familiarity with the Alternative Dispute Resolution Programs of this Court; and
>
> (3) Understanding and commitment to abide by the Standards of Professional Conduct of this Court set forth in Civil L.R. 11-4.

*See* N.D. Cal. Local Rule 11-1(c). Counsel's disavowal of any knowledge of the Rule thus contradicts his certification made to gain permission to practice in this District.

His ignorance also defies common sense. Counsel was seeking highly confidential personal information, such as bank records. Such information is routinely produced only after parties have entered into a protective order. But parties cannot enter into a protective order when one of them has not yet even been served. Further, Counsel was apparently under the mistaken belief that he has the right to unilaterally determine the appropriate scope of discovery since he had to know that the opposing party cannot object to a subpoena when it is served before the opposing party has even been located. Counsel's supposed ignorance violated Rule 26's command that an attorney "stop and think" about the legitimacy of a discovery request before made.

Further, when Counsel was indisputably no longer ignorant of Rule 26(d) he continued to enforce the subpoenas. According to Counsel's own testimony, JP Morgan provided him with Ms. Siso's objection to the JP Morgan subpoena on April 9, 2014. The objection specifically noted the prohibition on discovery before a Rule 26(f) conference. (Dkt. No. 24-5 ("Prior to a Rule 26 conference, no subpoena may be issued in a Federal suit without prior court order. *See Villegas v. U.S.* (E.D. Wash. 2012) 2012WL1801735.")). An objectively reasonable attorney who had

1   honestly not been aware of Rule 26(d) would at that point have inquired into the Rule and, finding
2   that it applied (as Counsel concedes), withdrawn the JP Morgan subpoena.  Counsel did not do so;
3   instead, he represented to the district court that the objection lacked merit and that Plaintiff
4   intended to file a motion to enforce the subpoena.

5         Second, Counsel insists that he was merely trying to locate Ms. Siso for purposes of
6   service of process after having looked unsuccessfully for months.  This representation, however, is
7   flatly contradicted by the breadth of the subpoenas. The subpoena to Amazon.com seeks a litany
8   of documents wholly unrelated to Ms. Siso's location.  For example, it seeks "documents that
9   relate to the book entitled 50 Premiere Winemakers of Napa Valley: Their Insights and
10  Inspirations, as listed on your website at http:/ /www.amazon.com/Premiere-Winemakers-Napa-
11  ValleyInspirations/dp/0986051500/ref=aag m pw dp?ie=UTF8&m=A2MVWSMOF A4C P2 (as
12  of February 8, 2014), including, but not limited to, documents reflecting financial information
13  about number of units sold and revenue for such sales." (Dkt. No. 20-2 at 15.)  Any contention
14  that a request for the number of books sold was designed to learn where Ms. Siso lived is not
15  credible.  Moreover, when Amazon.com objected to the subpoena, Counsel responded that "any
16  financial information sought by and within the scope of the subpoena, will be used by us solely for
17  the purposes of *prosecuting the above-entitled action*." (Dkt. No. 24-4 (emphasis added).)
18  Counsel did not tell Amazon.com that the documents would only be used for *locating* Ms. Siso
19  because that was not Counsel's intent.

20        The subpoenas to JP Morgan Chase and Bank of America likewise went well beyond
21  address information and sought *all* documents regarding Ms. Siso and particular accounts she had
22  with the respective financial institutions since October 2013.  (Dkt. No. 20-2 at 19 & 23.)  The
23  subpoena to First American Title sought not Ms. Siso's address, but the complete escrow file for
24  the house at issue in this litigation.  (Dkt. No. 20-2 at 11.)  These requests are not narrowly
25  tailored discovery aimed at determining Ms. Siso's location.

26        Counsel's conduct at Ms. Siso's mother's deposition further belies his representation that
27  he merely intended to locate Ms. Siso so he could serve the complaint; instead, Counsel used the
28  deposition to seek merits discovery: "Q: Did – did they set a wedding date in August of 2012?"

1    (Dkt. No. 42 at 20:10-11); "Q: There's certain information I want to get while we're here today,
2    and if I don't get it, we'll have to do this again. Do you remember discussing with Nicola that
3    they had set a wedding date?" (*Id*. at 21:10-15); "Q: And within two months of the time they set
4    that date, Nicola purchased that house in St. Helena?" (*Id*. at 22:13-14); "Q: And three months
5    later she broke off the engagement?" (*Id*. at 22:16-17); "Q: Let me ask you this. Did she plan to
6    live in St. Helena?" (*Id*. at 23:1-2); "Q: When did she tell you that she – when did she first tell
7    you she was going to sell the St. Helena house?" (*Id*. at 23:19-21). Finally, over the course of the
8    40 minute deposition, Counsel—on three separate occasions—told Ms. Siso that if she did not
9    answer his questions he would have to go to court and she would have to pay the costs of a second
10   deposition. (*Id*. at 5:7-13; 9:10-14; 29:16-19.)[3] While these sort of litigation tactics might be
11   what Counsel is accustomed to in a business dispute, in a domestic dispute such as this, they reek
12   of intimidation—Ms. Siso's mother was unrepresented by counsel, unfamiliar with the legal
13   process, and by her own testimony simply trying to protect her daughter from someone she was
14   afraid would hurt her. (*Id*. at 12:18-21; 17:12-14.)

15   Further, as attorneys admitted to practice in federal court should know, a court order is
16   required to obtain early discovery to obtain the identity or location of a defendant. *See, e.g.,*
17   *Skout, Inc. v. Jen Processing, Ltd,* No. 14-CV-02341-JSC, 2014 WL 3897166 (N.D. Cal. Aug. 7,
18   2014) (denying request for early discovery to discover doe defendants); *Braun v. Doe*, No. 12-CV-
19   3690 YGR JSC, 2012 WL 3627640 (N.D. Cal. Aug. 21, 2012) (granting early discovery to
20   identify doe defendants). The trial court considers whether "the need for expedited discovery, in
21   consideration of the administration of justice, outweighs the prejudice of the responding party."
22   *Semitool, Inc. v. Tokyo Electron Am., Inc*., 208 F.R.D. 273, 276 (N.D. Cal. 2002). Plaintiff could
23   not have met this standard.

---

[3] Ms. Siso's mother was told by a person she believed to be a process server that she was "required to appear on the date of the deposition and produce the requested documents or the police will arrest [me.]" (Dkt. No. 20-5 at ¶ 5.) Although Counsel disputes this version of events, he was neither present at the time the subpoena was served nor did he offer a declaration of someone with personal knowledge to contradict Ms. Siso's declaration.

Counsel's reliance on *Maale v. Caicos Beach Club Charter, Ltd.*, No. 08-80131, 2009 WL 302254, at *4 (S.D. Fla. Feb. 9, 2009), for the proposition that prematurely serving discovery does not warrant sanctions is misplaced. *Maale* did not involve third-party subpoenas for a defendant's private information before the defendant was served or had retained counsel. Moreover, *Maale* held that Rule 26(g) sanctions are required when the "discovery request has been interposed for any improper purpose, or where a competent attorney could not have reasonably believed that the paper was well grounded in fact and was warranted by existing law." *Maale*, 2009 WL 302254, at *4 (internal quotation marks and citation omitted). Both circumstances are present here. Counsel initiated the ex-parte discovery to, at least in part, obtain merits and assets discovery—an improper purpose. Further, any competent attorney would have been familiar with the Federal Rules of Civil Procedure before initiating a lawsuit in federal court, especially a rule as basic (and consistent with common sense) as Rule 26(d). And any competent attorney would have acknowledged and followed the Rule when it was brought to the attorney's attention through an objection to the discovery. Counsel here did neither.

Counsel also goes to great lengths to distinguish the cases cited by Defendant and complains that there is no case on all fours. The reason there are so few cases awarding sanctions under circumstances similar to those here, however, is that lawyers just do not do what Counsel did here.

As Counsel's violation of Rule 26(d) was not justified, let alone substantially justified, the Court awards Defendant sanctions under Rule 26(g)(3) in the amount of the fees and costs she incurred in filing this motion. Defendant seeks $13,375.00 in such fees and costs, but the amount is only an estimate and there is no indication that Defendant's counsel reviewed his billing records before making the estimate. Within ten days of this Order Defendant shall submit a supplemental declaration adequately supporting the fees and costs sought.

## CONCLUSION

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004). Counsel did not meet that responsibility here. For the reasons

1  stated above, the Motion to Quash and for Sanctions is GRANTED.  The subpoenas issued to the

2  California Department of Motor Vehicles, First American Title Company, Amazon.com, Inc., JP

3  Morgan Chase, Bank of America, N.A., and Defendant's mother, Sara Siso are QUASHED.

4  Within three days, Mr. Cook shall certify in writing that he has destroyed the original and all

5  copies of documents obtained in response to these subpoenas, including the deposition transcript.

6  Sanctions are awarded in an amount to be determined following receipt of Defendant's declaration

7  of fees and costs and shall be entered against Philip Cook and Jones Day LLP.

8  **IT IS SO ORDERED.**

9  Dated: August 29, 2014

                                    _____
                                    JACQUELINE SCOTT CORLEY
                                    United States Magistrate Judge